IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ANNA NOWAK, )
 )
                            Plaintiff, )
 )
     vs. )
 )
GENWORTH LIFE AND ANNUITY )
INSURANCE COMPANY and ALASKA )
USA FEDERAL CREDIT UNION, )
 )    No. 3:17-cv-0086-HRH
                        Defendants. )
_____)

O R D E R

Motion to Dismiss

Defendant Genworth Life and Annuity Insurance Company moves to dismiss plaintiff's claims.[1] This motion is opposed.[2] Oral argument was requested and has been heard. After oral argument, the court called on the parties to file supplemental briefing, which the parties have timely filed.[3]

---

[1] Docket No. 7. Alaska USA was also a defendant in this matter, but plaintiff's claims against Alaska USA have been dismissed. Docket No. 4.

[2] Docket No. 11.

[3] Docket Nos. 18 and 19.

-1-

Background

Plaintiff Anna Nowak is the widow of Bogdan Nowak ("Bogdan").[4] In 2001, Bogdan purchased a term life insurance policy through his employer, the Municipality of Anchorage, from First Colony Life Insurance Company.[5] Defendant is the successor insurer.[6] The premiums on the policy "were made by insurance premium drafts automatically paid from Bogdan's" Alaska USA bank account.[7]

In February 2016, Alaska USA "rejected the ... life insurance premium draft established for that quarter, so that the premium due to [defendant] for that quarter was never paid."[8] Because of an identity theft problem, Bogdan's original Alaska USA account had been closed and a new account opened.[9] Bogdan had "believed and assumed that his authority for premium payments was simply being transferred to the new account" but this did not happen.[10]

---

[4] Civil Complaint at 1, ¶ 1, Exhibit B, Notice of Removal of Civil Action, Docket No. 1.

[5] Id. at 2, ¶¶ 2, 4, 6.

[6] Id. at 2, ¶ 4.

[7] Id. at 2, ¶ 6.

[8] Id. at 3, ¶ 8.

[9] Id. at 5, ¶ 14.

[10] Id.

On February 24, 2016, defendant "sought to inform Bogdan that the premium insurance draft had been rejected by ... Alaska USA" by mailing a letter to "Post Office Box 670483, Chugiak Alaska 99567-0483[.]"[11] This was the address Bogdan had used on his application for the life insurance policy.[12] Bogdan had stopped using Post Office Box 670483 at some time prior to February 2016.[13] Plaintiff does not allege that Bogdan ever notified defendant that his address had changed.

The February 24, 2016 letter was returned to defendant as undeliverable and on March 8, 2016, defendant mailed a letter to Bogdan at 19444 Beverly Avenue, Chugiak, Alaska 99567.[14] In the March 8 letter, defendant advised Bogdan that the February 24 letter had been returned as undeliverable, and defendant enclosed a copy of the February 24 letter.[15] Bogdan did not receive the March 8 letter because "[t]he United States Postal Service ... has

---

[11]Id. at 3, ¶ 9; Exhibit B at 1, Motion to Dismiss for Failure to State a Claim, Docket No. 7. The court may consider this letter and the other exhibits attached to the Motion to Dismiss without converting the instant Rule 12(b)(6) motion into a motion for summary judgment because they are all documents incorporated by reference in the complaint. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

[12]Exhibit A at 18, Motion to Dismiss for Failure to State a Claim, Docket No. 7.

[13]Civil Complaint at 3 ¶ 9, Exhibit B, Notice of Removal of Civil Action, Docket No. 1.

[14]Id. at 4, ¶ 10; Exhibit C at 1, Motion to Dismiss for Failure to State a Claim, Docket No. 7.

[15]Exhibit C at 1-2, Motion to Dismiss for Failure to State a Claim, Docket No. 7.

not provided home mail delivery to residents of Beverly Avenue, which is or is considered to be within the Denali National Park."[16]

On April 18, 2016, defendant sent a letter to Bogdan at the Beverly Avenue address informing him that his life insurance coverage had ended as of February 14, 2016 due to non-payment of the premium.[17] The April 18 letter was returned as undeliverable.[18] On May 6, 2016, defendant mailed a letter to Bogdan at the Box 670483 address, informing him that the April 18 letter had been returned as undeliverable.[19] The May 6 letter included a copy of the April 18 letter.[20]

On June 12, 2016, Bogdan passed away.[21] Plaintiff made a claim against Bogdan's policy, but defendant denied plaintiff's claim and has refused to pay "any portion of the $250,000 insurance proceeds contracted for" by Bogdan.[22]

---

[16]Civil Complaint at 4, ¶ 11, Exhibit B, Notice of Removal of Civil Action, Docket No. 1.

[17]Id.; Exhibit D at 1, Motion to Dismiss for Failure to State a Claim, Docket No. 7.

[18]Civil Complaint at 4, ¶ 11, Exhibit B, Notice of Removal of Civil Action, Docket No. 1.

[19]Exhibit D at 3, Motion to Dismiss for Failure to State a Claim, Docket No. 7.

[20]Id. at 4.

[21]Civil Complaint at 1, ¶ 1, Exhibit B, Notice of Removal of Civil Action, Docket No. 1.

[22]Id. at 5, ¶ 13.

Plaintiff commenced this action in state court on February 10, 2017 and it was subsequently removed to this court. Plaintiff asserts negligence and breach of the implied covenant of good faith and fair dealing claims against defendant. Plaintiff alleges that defendant "was negligent because it never contacted Bogdan, [Alaska USA], or the Municipality of Anchorage" to let him know that his life insurance policy "was about to lapse, or had lapsed, or was to be cancelled, or that it had been cancelled."[23] Plaintiff alleges that defendant breached the implied covenant of good faith and fair dealing "because it ... never contacted Bogdan by telephone or e-mail to inform him that his premium payment had not been received or that his policy was about to lapse or had lapsed, or that the policy was about to be cancelled, or that the policy had been cancelled."[24] Plaintiff also alleges that defendant acted in bad faith by "never check[ing] with the Municipality of Anchorage or with [Alaska USA], either when informed that the insured's post office box number was no longer operative, or later, when informed that the street address on Beverly Avenue was a place to which mail could not be delivered."[25]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendant now moves to dismiss plaintiff's claims.

---

[23] Id. at 12, ¶ 34.

[24] Id. at 11, ¶ 32(a).

[25] Id. at 11, ¶ 32(b).

Case 3:17-cv-00086-HRH   Document 21   Filed 08/31/17   Page 5 of 16

Discussion

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "A dismissal under rule 12(b)(6) 'may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Kwan v. SanMedica Int'l, 854 F.3d 1088, 1093 (9th Cir. 2017) (quoting Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008)).

Defendant first moves to dismiss plaintiff's negligence claim. Under Alaska law, "[d]uty, breach of duty, causation, and harm are the separate and distinct elements of a negligence claim[.]" Lyons v. Midnight Sun Transp. Servs., Inc., 928 P.2d 1202, 1204 (Alaska 1996). "'The existence and extent of a duty of care are questions of law for the court to determine.'" Bolieu v. Sisters of Providence in Wash., 953 P.2d 1233, 1235 (Alaska 1998) (quoting Beck v. State, Dep't of Transp. & Pub. Facilities, 837 P.2d 105, 109 (Alaska 1992)).

The question here is whether an actionable duty of care exists. "In deciding whether a defendant owes a plaintiff a duty of reasonable care, [the court] first determine[s] whether a duty is imposed by statute, regulation, contract, undertaking, the parties' preexisting relationship, or existing case law." McGrew v. State, Dep't of Health and Social Services, Div. of Family and Youth Services, 106 P.3d 319, 322 (Alaska 2005). "If these sources do not resolve the issue, [the court] appl[ies] the multi-factor approach discussed in D.S.W. v. Fairbanks North Star Borough School District to determine whether an actionable duty of care exists." Id.

The Alaska Supreme Court has never considered whether an insurer has a duty to provide notice to an insured prior to canceling a life insurance policy. "'When the state's highest court has not squarely addressed an issue,' [the court] predict[s] 'how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treaties and restatements for guidance.'" In Matter of Heller Ehrman LLP, 830 F.3d 964, 973 (9th Cir. 2016) (quoting Glendale Associates, Ltd. v. N.L.R.B., 347 F.3d 1145, 1154 (9th Cir. 2003)).

Defendant originally argued that the existence and extent of its duty was imposed by statute. AS 21.36.220 requires that an insurer send written notice before exercising its right to cancel "a personal insurance policy." AS 21.36.260 provides:

> If a notice is required from an insurer under this chapter, the insurer shall
>
> (1) mail the notice by first class mail to the last known address

-7-

Case 3:17-cv-00086-HRH   Document 21   Filed 08/31/17   Page 7 of 16

> of the insured and obtain a certificate of mailing[26] from the United States Postal Service; or
>
> (2) transmit the notice by electronic means, to the last known electronic address of the intended recipient, if the insurer can obtain an electronic confirmation of receipt by the intended recipient.

Thus, defendant argued that the statutes do not impose any duty on insurers to investigate or do anything more than mail or email notice to the last address on file. But, defendant now concedes[27] that AS 21.36.220 and AS 21.36.260 do not apply here because these statutes only apply to "personal insurance", which does not "include ... a policy of life insurance[.]" AS 21.36.310(4)(B). The statutes dealing with life insurance are silent as to an insurer's duty to notify an insured prior to canceling a life insurance policy.

There is also no duty imposed by contract in this case. Bogdan's insurance contract contained no provision requiring that the insurer notify the insured prior to cancelling the policy. Rather, the policy provided that "[i]f a premium has not been paid by the end of its grace period, this Policy will terminate subject to its terms as of the Premium Due Date of that premium."[28]

---

[26] "A certificate of mailing from the U.S. Postal Service serves only as proof of mailing. When ... returned mail directly establishes that an insurer has mailed notice, the purpose of AS 21.36.260(2)—establishing proof of mailing—is accomplished." Blood v. Kenneth A. Murray Ins., Inc., 151 P.3d 428, 432 (Alaska 2006).

[27] Genworth Life and Annuity Insurance Company's Supplemental Brief in Support of Motion to Dismiss at 2, Docket No. 18.

[28] Exhibit A at 9, Motion to Dismiss for Failure to State a Claim, Docket No. 7.

-8-

There is, however, case law that suggests how the Alaska Supreme Court would decide this issue. The Alaska Supreme Court has observed that an insurance broker or agent has a "duty to inform the insured of cancellation." Jefferson v. Alaska 100 Ins., Inc., 717 P.2d 360, 364 (Alaska 1986). There is no reason that the same duty should not apply to an insurer. The court predicts that the Alaska Supreme Court would hold that an insurer has a duty to exercise reasonable care to inform an insured of cancellation of a life insurance policy.

The question then becomes whether defendant exercised reasonable care here. It is undisputed that defendant mailed notice to Bogdan's last known address and that defendant located an alternative address to which it also mailed notice. Although defendant was aware that neither of these notices reached Bogdan, as both were returned, defendant undertook no further investigation, such as contacting Bogdan's employer or the financial institution that Bogdan was using to pay his premiums.

Plaintiff argues that defendant's efforts were not sufficient. Plaintiff argues that actual notice should be required in order for an insurer to meet its duty of reasonable care when a life insurance policy is involved. Plaintiff argues that because life insurance policies may be in effect for an extended period of time, it would not be uncommon that an insured would relocate during the policy period or that the insured's address might change for other reasons during the policy period. Thus, plaintiff contends that it would not be unreasonable

to require the insurer to provide actual notification of cancellation, which it is undisputed defendant did not do here.

The one case cited by plaintiff in support of this contention, Conrad v. Universal Fire & Cas. Ins. Co., 686 N.E.2d 840 (Ind. 1997), does not help plaintiff. There, the court expressed its agreement with other courts "that have held that proof of mailing, by certified mail or by ordinary mail, creates a presumption of delivery, but the presumption of delivery may be rebutted where a certified letter is returned undelivered." Id. at 843. However, the court "express[ed] no opinion as to whether a letter sent by ordinary mail but returned to sender permits rebuttal of the presumption of delivery. However, the reasons for such a return will often be due to failure by the addressee to update the address, in which case, the notice would be effective." Id. Here, the notices defendant sent to Bogdan were sent by regular mail. Thus, Conrad suggests that defendant's notice, although not actual notice, was effective.

Plaintiff's contention that actual notice is required would place an undue burden on the insurer. The court finds Blood v. Kenneth A. Murray Insurance, Inc., 151 P.3d 428 (Alaska 2006), instructive on this issue.

There, Blood purchased a Progressive auto insurance policy from Kenneth A. Murray Insurance ("KMI). Id. at 429. Progressive sent notices to Blood that his insurance was about to lapse for failure to pay his premium and then a final notice that his policy had been cancelled. Id. at 429-30. These notices were sent to the address Progressive had on file for

Blood, an address at which Blood no longer lived. Id. at 430. The notices were returned as undeliverable to KMI, rather than Progressive. Id. On August 2, 1997, Blood was injured in a car accident and he filed a claim with Progressive, which "Progressive denied ... on the ground that Blood's coverage under the policy ended before the accident because he did not pay the renewal premium." Id. Blood filed a negligence claim against KMI, arguing that KMI had been "negligent in failing to use reasonable efforts to obtain his last known address, and that therefore Progressive's attempts to cancel his policy for non-payment ...were ineffective." Id.

The Alaska Supreme Court first considered whether KMI had met its statutory duty to provide notice, an issue that is not implicated in this case. The Alaska Supreme Court also considered whether KMI had a separate, non-statutory duty to "'exercise reasonable care[.]'" Id. at 432. Blood argued that KMI had a duty "to use reasonable care and due diligence to determine [his] correct address." Id. at 433. The court found that there was no such extra duty in part because "the insured is typically aware that his insurance will terminate when premiums are not paid, even without notice from the insurer" and because "[r]equiring insurers to track down the new addresses of its insured would impose a significant burden on a routine transaction[.]" Id. at 433-434. Blood signals that the Alaska Supreme Court is not willing to put the burden on an insurer that plaintiff is suggesting here. The court thus predicts that the Alaska Supreme Court would not require actual notice.

-11-

Case 3:17-cv-00086-HRH Document 21 Filed 08/31/17 Page 11 of 16

Defendant had a duty to exercise reasonable care in notifying Bogdan about the cancellation of his life insurance policy. Defendant satisfied that duty by mailing notices to Bogdan's last known address and to a second address that it located. Defendant was not required to do more. Because defendant met its duty to provide notice of cancellation, plaintiff's negligence claim is not plausible and it is dismissed. Plaintiff is not given leave to amend this claim as any amendment would be futile.

Defendant also moves to dismiss plaintiff's breach of the implied covenant of good faith and fair dealing claim. "Under Alaska's contract law, 'the covenant of good faith and fair dealing ... is implied in all contracts.'" Lockwood v. Geico Gen. Ins. Co., 323 P.3d 691, 697 (Alaska 2014) (quoting State Farm Mut. Auto. Ins. Co. v. Weiford, 831 P.2d 1264, 1266 (Alaska 1992)). Although the Alaska Supreme Court has "declined to define the elements of the tort of bad faith in an insurance contract, [Alaska] precedent makes clear that the element of breach at least requires the insured to show that the insurer's actions were objectively unreasonable under the circumstances." Id.

Defendant first argues that plaintiff's bad faith claim fails as a matter of law because there was no potential for coverage here. Although the Alaska Supreme Court has never addressed the issue of whether an insurer may be held liable for bad faith when there is no coverage, defendant urges this court to predict that the Alaska Supreme Court would so hold.

"In recognizing the tort of bad faith in first-party cases," the Alaska Supreme Court "aligned Alaska with those jurisdictions that have followed Gruenberg v. Aetna Insurance

-12-

Co., 510 P.2d 1032 (Cal. 1973)[.]" Hillman v. Nationwide Mut. Fire Ins. Co., 855 P.2d 1321, 1323 (Alaska 1993). In other words, according to defendant, the Alaska Supreme Court has looked to California law when defining the contours of a bad faith claim against an insurer. In Waller v. Truck Insurance Exchange, Inc., 900 P.2d 619, 639 (Cal. 1995), the California Supreme Court explained that "if there is no potential for coverage ... there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." Id. "Absent [a] contractual right, however, the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." Id. (citation omitted).

The court need not predict whether the Alaska Supreme Court would follow Waller because plaintiff's bad faith claim is subject to dismissal because defendant had a reasonable basis for denying coverage – the nonpayment of premiums. In light of the fact that plaintiff has admitted that Bogdan did not pay the premium that was due on February 2016, defendant had a reasonable basis to deny coverage and that it did not further investigate where to send notice to Bogdan is of no import because, as discussed above, defendant met its duty to exercise reasonable care to provide notice of cancellation.

Carmichael v. Adirondack Bottled Gas Corp. of Vermont, 635 A.2d 1211 (Vermont 1993), the case cited by plaintiff, is not to the contrary. Carmichael involved a commercial contract that included a "key man" provision and the question of whether a bad faith claim could be maintained by the widow of the "key man." Id. at 1213, 1215. The court held that it could because there were still some winding down contractual obligations that survived the key man's death. Id. at 1216-17. But here, defendant's contractual obligations ceased once the policy lapsed. At the time of Bogdan's death, defendant no longer owed him or his beneficiary any contractual obligations. The question here is whether plaintiff has stated a plausible bad faith claim based on defendant's denial of coverage. Because defendant plainly had a reasonable basis for denying coverage, plaintiff's bad faith claim is implausible and it is dismissed.

Plaintiff argues that she should be given leave to amend her bad faith claim because it is plausible that defendant acted in bad faith because it did not apply the Automatic Premium Loan (APL) Option in Bogdan's policy. The APL Option was an option that "may be elected in the application."[29]

> If elected, this option provides automatic payment by policy loan of the premium for the mode in effect. The loan will be made at the end of the grace period.... If there is not sufficient value to advance the premium as a policy loan, no automatic premium loan will be made.[30]

---

[29]Exhibit A at 12, Motion to Dismiss for Failure to State a Claim, Docket No. 7.

[30]Id.

-14-

On his application, Bogdan did not check either yes or no for the APL Option, but the application provided that "[i]f available, APL will be effective unless "No" is checked."[31]

Plaintiff argues that defendant acted in bad faith by not applying the APL Option at the end of the grace period, even though, as plaintiff acknowledges, Bogdan's policy had no cash value because it was a term policy. Plaintiff argues that a reasonable insured would not have necessarily understood that the APL Option did not apply, particularly since defendant included this Option on its application for term life insurance. Plaintiff suggests that defendant has confused its insureds by including an option that normally only applies to whole life insurance on an application for term life insurance.

Amendment of plaintiff's bad faith claim would be futile because defendant had a reasonable basis for not issuing a policy loan. The policy provided that "[t]he loan value of this Policy is the cash value as of the earlier of the next Premium Due Date and the end of the current policy year."[32] The policy also included a table which showed the "guaranteed cash or loan value" of the policy at the end of each policy year.[33] This table showed that for the end of policy years 1-50, the policy had a cash value of zero.[34] There are terms that a reasonable layperson could understand. Because Bogdan missed his premium payment in

---

[31]Id. at 18.

[32]Id. at 12.

[33]Id. at 13.

[34]Id.

-15-

Case 3:17-cv-00086-HRH   Document 21   Filed 08/31/17   Page 15 of 16

the 15th year of the policy, the policy had no cash value. Because the policy had no cash value, defendant could not have issued a policy loan.

## Conclusion

Defendant's motion to dismiss is granted. Plaintiff's complaint is dismissed with prejudice.

DATED at Anchorage, Alaska, this 31st day of August, 2017.

/s/ H. Russel Holland
United States District Judge

-16-

Case 3:17-cv-00086-HRH   Document 21   Filed 08/31/17   Page 16 of 16